N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ZEE COMPANY, INC., R.C. CONRAD,  )
ROBERT DODD, BENJAMIN          )
LUKOWSKI, BARRY OWINGS,      )
     Plaintiffs / Counterclaim      )
Defendants,                       )
                             )
          v.                )      Case No. 1:11cv458
                             )
WILLIAMS, MULLEN, CLARK &     )
DOBBINS, P.C.,              )
     Defendant / Counterclaim     )
Plaintiff.                     )

## MEMORANDUM OPINION

This action arises from an alleged failure of the defendant law firm, which represented

the plaintiff company in a separate tort suit in state court, to communicate a so-called "walk-

away" offer of settlement to the company.  The plaintiff company further alleges that it would

have accepted the "walk-away" offer, which would have resolved the tort suit with no payment

by either party.  The defendant law firm denies that any walk-away offer of settlement was made

and indeed denies that any binding settlement offer was made at the time alleged.  The plaintiff

company, which was exposed to millions of dollars in damages and attorney's fees resulting

from the underlying action, now brings claims against the defendant law firm for legal

malpractice and constructive fraud.

At issue on summary judgment is whether the plaintiff has adduced sufficient admissible

evidence to create a triable issue of fact as to whether a "walk-away" offer of settlement was

actually made to the defendant law firm, or that a more favorable outcome in the underlying

action would have resulted had the statement alleged to be a "walk-away" offer been

communicated to the plaintiff.  For the reasons that follow, there is no admissible record

evidence that a "walk-away" offer was ever made, nor does the summary-judgment record contain evidence that defendant's failure to communicate to plaintiff the statement plaintiff contends constitutes the walk-away offer actually injured plaintiff. Summary judgment must therefore be granted on plaintiff's claims for legal malpractice and constructive fraud.

**I.**[1]

The parties in this action consist of a private company, several of its employees, and the law firm that represented the company and the employees in the underlying litigation giving rise to this dispute. Plaintiff / counterclaim defendant Zee Company, Inc. ("Zee Company") is based in Tennessee and provides water processing products and services. At all relevant times, Zee Company employed the individual plaintiffs / counterclaim defendants R.C. Conrad, Robert Dodd, Benjamin Lukowski, and Barry Owings (collectively referred to as the "Zee Individuals" and together with Zee Company, referred to simply as "Zee"). GE Betz, Inc. ("GE Betz"), a competing water processing company headquartered in North Carolina, was originally named as a defendant in this action but was subsequently dismissed. *See Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*, No. 1:11cv458 (E.D. Va. Dec. 16, 2011) (Order) (dismissing fraud, intentional interference with contractual relations, and punitive damages claims against GE Betz). Defendant / counterclaim plaintiff Williams, Mullen, Clark & Dobbins, P.C. ("Williams Mullen") is a Virginia-headquartered law firm retained by Zee to represent Zee in an action brought by GE Betz in North Carolina state court in April 2007 (the "North Carolina action").

In the North Carolina action, GE Betz alleged, *inter alia*, that the Zee Individuals, who were former GE Betz employees, had violated non-compete agreements after joining Zee

---

[1] The facts recited here are derived from the summary-judgment record and are either undisputed or, if disputed, they are identified as such and the summary-judgment analysis proceeds on the assumption that the dispute of fact is resolved in Zee's favor.

Company.  More specifically, GE Betz asserted against Zee claims of tortious interference with contract and business expectancy, as well as unfair and deceptive trade practices pursuant to North Carolina General Statutes § 75-1.1 *et seq.*  The GE Betz principal responsible for the North Carolina action was Glynn Key, GE Betz's general counsel.  GE Betz was represented in the North Carolina action by a team consisting of lead counsel Victoria Cundiff, a partner of the New York- based law firm Paul Hastings LLP, and trial counsel John Martin and Jenna Butler, members of the North Carolina- based law firm Ward and Smith, P.A.  With respect to Zee, Robert Barrett, a Williams Mullen shareholder, served as lead counsel for Zee in the North Carolina action until Williams Mullen was permitted to withdraw in June 2010.

After filing its complaint in the North Carolina action in early April 2007, GE Betz proceeded promptly to seek preliminary relief.  On April 16, 2007, the state court entered a temporary restraining order enjoining Zee Company from certain conduct with respect to GE Betz's customers.  The next day, Cundiff (GE),[2] in the presence of Butler (GE), spoke by phone with Williams Mullen attorney Barrett (Zee) about the North Carolina action.[3]  At the time of the April 17, 2007 phone conversation, GE Betz and Zee, as well as their respective legal teams, were prepared to engage in extensive, expedited discovery prior to the preliminary-injunction hearing.  Cundiff testified in her deposition that in the course of the conversation, she had told Barrett the following:

> I said, Well, we could continue the discussions that [Barrett] and [GE
> Betz's local counsel] have started. If [Zee] were prepared to cease
> switching of accounts, [were] prepared to withdraw the DAK proposal,

---

[2] For purposes of clarity, a reference to a particular lawyer may be followed by a parenthetical noting which client that lawyer was representing at the relevant time, *e.g.*, "Barrett (Zee)."

[3] Although there is substantial record evidence tending to show that this call never occurred, Cundiff's own recollection makes the issue one of disputed fact that is appropriately resolved in Zee's favor for purposes of summary judgment. (*See, e.g.*, Doc. 171-2, Barrett Dep. 142–46).

> [were] prepared to agree on the customers subject to the agreements, and
> [were] prepared to agree to a restart of the time period of the restrictive
> covenant, [we] might be able to wrap things up.

(Doc. 181-1, 2d Cundiff Dep. 16) (the "Cundiff statement"). According to Cundiff, Barrett, in

response, insisted that the matter should proceed. Specifically, by Cundiff's recollection, Barrett

responded by stating (i) that Zee "disagreed that there should ever have been an injunction," (ii)

that "GE wasn't entitled to enforce the contracts," (iii) that GE Betz's "point on switching was

wrong," (iv) that Barrett would not agree to an "extension of the TRO for any purpose," and (v)

that discovery should proceed. (*Id.* at 17–19, 46). On April 27, 2007, the state court issued a

preliminary injunction enjoining Zee from: (i) communicating with entities on the customer list

GE Betz submitted for a period of one year, (ii) soliciting any GE Betz employees, (iii) using or

disclosing GE Betz's confidential information, or (iv) assisting others in doing the foregoing.

Months later, in December 2007, Zee asserted counterclaims against GE Betz alleging tortious

interference with contract and business expectancy, and unfair and deceptive trade practices.

GE Betz and Zee engaged in substantial discovery efforts in the North Carolina action.

In this regard, the parties produced and exchanged large volumes of documents and deposed

many witnesses. As a result of these litigation activities, the parties incurred substantial legal

fees and expenses. Indeed, by letter dated November 14, 2007, Butler (GE) told Barrett (Zee)

that "GE Betz *always has been* and remains serious about collecting its attorneys' fees and

damages," and that "GE Betz intends to pursue its rightful claims, and it is *not willing to simply

walk away*." (Doc. 171-14, at 1 (emphasis added)).

Beginning in February 2008, GE Betz made several settlement offers to Zee, all of which

involved Zee's payment of money to GE Betz. Specifically, during a February 2008 mediation,

GE Betz offered to accept $800,000 from Zee in settlement of the North Carolina action.[4]  Zee

rejected this offer and apparently made a counteroffer, which was not accepted, that Zee pay GE

Betz $170,000.  (*See* Doc. 171-1, Bullard Dep. 110).  Next, in June 2008, GE Betz sent a written

offer to settle the matter—GE Betz's only written settlement offer—for Zee's payment of

approximately $1.393 million.  Zee also rejected this offer and, in a written counteroffer that GE

Betz ultimately rejected, proposed that GE Betz pay Zee's attorney's fees and dismiss its claims

in exchange for Zee dismissing its counterclaims.  Finally, during a February 2010 mediation,

GE Betz offered to settle the matter for Zee's payment of $1.8 million.  Once again, Zee rejected

settlement.  After Zee had declined each of GE Betz's offers, jury selection and trial in the North

Carolina action began in February 2010.[5]

At some point in time—the record does not disclose precisely when—rumors began to

circulate among GE Betz's lawyers that at the outset of the North Carolina action, GE Betz had

extended a "walk-away" offer to Zee wherein both GE Betz and Zee would agree to abandon

their respective litigation efforts without payment of money by either side.  The first Zee attorney

to hear these rumors was Daniel Barks, whom Zee had retained to observe certain proceedings in

the North Carolina action.  Barks testified that in February 2010, during jury selection in the

North Carolina action, he had heard from Martin (GE) that GE Betz had given Zee "an

opportunity to walk away" and also heard Martin "describe[] a settlement offer that had been

conveyed . . . to stop the whole thing for no money[.]"  (Doc. 177-3, Barks Dep. 79).  Barks also

testified that he had heard from Key (GE) that "there was an offer to walk away, no payment,

---

[4] Zee's rejection of this settlement offer became the basis for Williams Mullen's pending motion
to limit the amount of damages Zee could recover in this action to a maximum of $800,000.

[5] For reasons irrelevant to the summary-judgment analysis, the North Carolina Court of Appeals
stayed the action while jury selection was ongoing but later lifted the stay, after which
proceedings in the trial court resumed.

around the time of the TRO, and everyone go do their own thing." (*Id.* at 94). Neither Martin nor Key indicated to Barks who on GE Betz's behalf had communicated a walk-away offer to Zee. (*Id.* at 100–01). Martin later testified that he lacked any personal knowledge of such an offer, and Key testified that she did not recall GE Betz ever making such an offer. (*See* Doc. 171-16, 1st Martin Dep. 15, 39; Doc. 171-17, 2d Martin Dep. 31–32; Doc. 177-1, Key Dep. 23).

Later in 2010, Stephanie Adams, a lawyer with the North Carolina law firm Rountree, Losee and Baldwin, LLP serving as Zee's local counsel in the North Carolina action, also became aware of rumors of a supposed walk-away offer. In an affidavit, Adams stated that she had heard from Martin (GE) that Key (GE) had made a walk-away offer before Zee filed its counterclaims against GE Betz in December 2007. (Doc. 182-3, Adams Aff. ¶¶ 5–6). Adams also stated that she heard from Butler (GE) that Cundiff (GE) had told Butler that Cundiff had a "firm recollection" that a walk-away offer had been made "during the time frame of the issuance of the TRO and PI hearing" and that Cundiff was "certain" that it was Butler who had made the offer. (*Id.* ¶ 9). When deposed, neither Butler nor Key recalled making such an offer. (Doc. 171-8, Butler Dep. 12–13; Doc. 177-1, Key Dep. 23).

Rumors of a walk-away offer eventually reached Zee Company president Robert Bullard, who first learned of those rumors from Barks (Zee) shortly after Barks had heard from Martin (GE) in February 2010 that a walk-away offer had been conveyed in April 2007. On or about April 15, 2010, Zee informed Williams Mullen that Zee no longer wished to be represented by Williams Mullen in the North Carolina action, and Zee requested the case files so that the files could be transferred to new counsel. As of that date, Williams Mullen contends that Zee owed Williams Mullen approximately $1.2 million in outstanding attorney's fees that had been billed to Zee Company in connection with the North Carolina action. The North Carolina court

allowed Williams Mullen to withdraw in the North Carolina action on June 11, 2010. Zee did not bring the rumors of a walk-away offer to Williams Mullen's attention until after its withdrawal.

After Zee discharged Williams Mullen as counsel in the North Carolina Action, Zee and GE Betz proceeded to trial, with Zee represented by Zee's counsel in this action.[6] A bench trial on GE Betz's claims and on Zee's counterclaims was held from September 27 to November 12, 2010, after which the state court took the matter under advisement. On July 24, 2011, the state court entered judgment in favor of GE Betz and against Zee in the amount of $288,297.00 plus interest, costs, and reasonable attorney's fees and punitive damages in amounts to be determined at a later date. The state court also entered judgment in favor of GE Betz and against Zee on Zee's counterclaims. Although the state court has not yet decided the amount of the attorney's fee award, GE Betz estimates that it incurred over $5 million in attorney's fees litigating the North Carolina action.

Prior to the entry of judgment in the North Carolina action, Zee initiated the instant action against Williams Mullen by filing a complaint on April 28, 2011 in this court, citing diversity of citizenship as the basis for subject-matter jurisdiction. The original complaint contained claims for legal malpractice and constructive fraud based on the allegation, *inter alia*, that Williams Mullen had failed to communicate a walk-away offer to Zee. Zee further alleged that Williams' Mullen's failure in this regard damaged Zee because had Zee had been presented with a walk-

_____

[6] It is worth noting (but immaterial to the summary-judgment analysis) that the appearance of both counsel in this case is somewhat surprising. Williams Mullen has chosen to represent itself despite the fact that members of the firm would likely have to testify on the claims in the complaint and the counterclaim in this action. Similarly, Zee's current counsel was also Zee's successor counsel in the North Carolina action, and because that firm's legal fees and expenses are part of the contested damages alleged in the complaint in this action, that firm's lawyers also may be required to testify in this case.

away offer, Zee would have accepted and thereby would have avoided exposure to substantial sums in damages, costs, and attorney's fees in the North Carolina action.  Later, Williams Mullen filed a counterclaim against Zee alleging that Zee had not paid Williams Mullen over a million dollars in outstanding attorney's fees in connection with Williams Mullen's representation of Zee in the North Carolina action.  On October 24, 2011, Zee filed an amended complaint naming GE Betz as an additional defendant and alleging, assuming in the alternative that a walk-away offer was not made, that GE Betz told Zee that a walk-away offer was made with the intention of inducing Zee to terminate Williams Mullen's representation.  GE Betz sought dismissal of all claims against it.  On December 16, 2011, GE Betz's motion was granted, and GE Betz was dismissed as a party in this action.  *See Zee Co. v. Williams, Mullen, Clark, & Dobbins, P.C.*, No. 1:11cv458 (E.D. Va. Dec. 16, 2011) (Order) (Doc. 94).

On March 1, 2012, Williams Mullen moved for summary judgment on all of Zee's claims against it.  Central to resolution of the summary-judgment motion is the April 2007 Cundiff statement that GE Betz and Zee "might be able to wrap things up" in the North Carolina action if Zee satisfied four conditions that Cundiff listed.  Williams Mullen's principal argument on summary judgment, distilled to its essence, is that Zee's claims for legal malpractice and constructive fraud must fail as a matter of law because the record contains no evidence from which a reasonable jury could conclude, without conjecture, speculation, or surmise, that a walk-away offer was made or that failure to communicate the Cundiff statement injured Zee. Moreover, on a motion *in limine*, Williams Mullen seeks to exclude as inadmissible hearsay, for purposes of summary judgment and trial, any testimony by Barks (Zee) and Adams (Zee) concerning references to a walk-away offer that Martin (GE), Key (GE), and Butler (GE) had made to Barks and Adams.  In response, Zee argues that these statements are admissible and

- 8 -

further argues that the evidence of lost settlement opportunity is sufficient for their claims to withstand summary judgment.  The motion for summary judgment and motion *in limine* have been fully briefed and argued and are now ripe for disposition.

## II.

Summary judgment is appropriate where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The question on summary judgment is "whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant[.]"  *In re Apex Express*, 190 F.3d 624, 633 (4th Cir. 1999).  Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial.  *See Celotex*, 477 U.S. at 322.  And, finally, particularly pertinent here is the principle that only competent admissible evidence is eligible for consideration on summary judgment.  *See Greensboro Professional Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 & n.5 (4th Cir. 1995).  *Accord* Rule 56(c)(4), Fed. R. Civ. P. (providing that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

III.

Because resolution of the motion *in limine* may result in excluding evidence from the summary-judgment record, analysis appropriately begins with the first question presented, namely whether testimony regarding certain out-of-court statements that mention a walk-away offer is admissible evidence. In support of its motion, Williams Mullen argues that this testimony is necessarily based on inadmissible hearsay and thus must be excluded under the hearsay rule. *See* Rule 802, Fed. R. Evid. Zee responds that the hearsay rule does not operate to exclude this testimony[7] because the out-of-court statements referencing a walk-away offer are admissible under the residual exception to the hearsay rule, now codified at Rule 807, Fed. R. Evid.,[8] which permits "the admission of statements that fail the strict requirements of the prior [hearsay] exceptions, but are nonetheless shown to be reliable." *United States v. Clarke*, 2 F.3d 81, 83 (4th Cir. 1993). Thus, it must be determined whether these out-of-court statements carry "'circumstantial guarantees of trustworthiness' equivalent to those embodied in the traditional, codified [hearsay] exceptions,"[9] which is "[t]he most important element"[10] of the residual exception. Here, the issue with respect to trustworthiness focuses sharply on whether the

---

[7] Although Zee also argues that the declarants are "unavailable" for lack of memory under Rule 804(a)(3), Fed. R. Evid., this argument need not be addressed because Zee does not contend, nor could it demonstrate in any event, that any of the declarants' statements falls within one of the enumerated exceptions under Rule 804(b) as required to be excepted from the hearsay rule by operation of Rule 804.

[8] For a summary of the history of the residual exception, see *United States v. Dunford*, 148 F.3d 385, 392 n.2 (4th Cir. 1998).

[9] *United States v. Mitchell*, 429 F. App'x 271, 274 (4th Cir. 2011) (quoting Rule 807(a)(1), Fed. R. Evid.).

[10] *United States v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998).

circumstances under which statements that a supposed walk-away offer was made indicate that

the statements are, in fact, true.[11]

Beginning with the testimony of Barks and Adams, it is pellucidly clear that the residual

exception does not rescue their testimony from exclusion under the hearsay rule because none of

the declarants who mentioned a walk-away offer to them has personal knowledge of such an

offer.  Martin admitted that his knowledge of a walk-away offer was based on hearsay several

times removed,[12] not his personal knowledge, and that his statements to Barks and Adams that a

walk-away offer was made were incorrect in any event.  Similarly, neither Butler nor Key had

personal knowledge of a walk-away offer being made; to the contrary, Key testified that she

lacked such knowledge, and Key and Butler each denies having made a walk-away offer.  In

short, no declarant actually observed a walk-away offer being made, and the absence of *any*

witness with first-hand knowledge of such an offer casts substantial doubt on the proffered

testimony's reliability.[13]  Thus, the proffered testimony of Barks and Adams must be excluded

under the hearsay rule because statements made to them mentioning a walk-away offer were

based exclusively on second-level hearsay from declarants—who were in many instances

unidentified—whose personal knowledge of a supposed walk-away offer cannot be established

---

[11] Zee appears to misunderstand that the trustworthiness inquiry chiefly concerns not whether the statements were actually *made*, but rather whether the statements are substantively *true*.

[12] Indeed, Martin could not identify who first told him that a walk-away offer had been made. Although Zee argues that Cundiff must have been the person to told Martin about the supposed walk-away offer, this argument forecloses the residual exception's applicability to Martin's statements, which cannot be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts" given that Cundiff herself admitted to making the Cundiff statement.  Rule 807(a)(3), Fed. R. Evid.

[13] As Williams Mullen correctly observes, it is implausible that GE Betz would have offered to "walk away" from the North Carolina action in April 2007 because Zee had not yet asserted counterclaims against GE Betz and thus had no claims to "walk away" from at that time.

on this record. *See Coyle v. Kristjan Palusalu Maritime Co.*, 83 F. Supp. 2d 535, 545–46 (E.D. Pa. 2000) (noting that "the residual exception is not intended to eliminate the ordinary requirement that a witness' testimony be grounded on personal knowledge" and finding the residual exception inapplicable to statements there at issue for this reason).[14]

The reasons Zee advances to support admission of Barks' and Adams' testimony about a walk-away offer fail to establish that the out-of-court statements on which the testimony relies are sufficiently reliable to be considered trustworthy under the residual exception. Specifically, Zee points to the following five factors that, according to Zee, favor admission of these statements: (i) the statements' repetition and consistency;[15] (ii) their contemporaneous recordation;[16] (iii) the declarants' lack of motive to fabricate;[17] (iv) the serious context of the statements, and (v) the declarants' subsequent conduct. These factors, even taken together, fail to support application of the residual exception because they do not overcome the fatal deficiency that no declarant has firsthand knowledge of a purported walk-away offer. Absent proof of personal knowledge, the factors do not make it any more probable that the declarants'

---

[14] Assuming, without deciding, that the residual exception does not *necessarily* require that the offering party produce proof of that the declarant has personal knowledge of the proffered statement's subject matter, it is beyond dispute that the presence or lack of such knowledge is an important consideration in the residual-exception analysis.

[15] Although Barks and Adams testify that several declarants told them that a walk-away offer was made, these declarants are not consistent in their beliefs as to *who* made the supposed offer. *See infra* note 18.

[16] This factor supports only Martin's statement to Adams, as this was the only statement that was transcribed in any form at the time at which it was made.

[17] This factor is belied by Zee's allegation in its First Amended Complaint that GE Betz knowingly made misrepresentations to Zee about a walk-away offer to drive a wedge between Zee and its then-counsel, Williams Mullen.

beliefs with respect to a walk-away offer, while honestly held, were based on anything other than hearsay and conjecture, which are not reliable bases for a reasonable belief.[18]

Similarly, any testimony from Martin (GE), Rountree (Zee), and Ellis (Zee)[19] regarding a walk-away offer, which Williams Mullen has not sought to exclude specifically but which Zee cites as support for its contention that a walk-away offer was made,[20] is clearly inadmissible for the same reasons that the proffered testimony of Barks and Adams is inadmissible, namely, that this other testimony is based entirely on unreliable, inadmissible hearsay. (*See* Martin Dep. 13 (testifying that he merely "*understood*" that a walk-away offer was made) (emphasis added); Rountree Aff. ¶¶ 4, 7–8 (stating that he "became clearly aware that GE Betz had made, *what was described to me as*, a walk-away offer," that one of GE Betz's trial counsel, Charles Ellis, "*informed me* that I had every good reason to believe an offer had made," and that Ellis "further *informed me* that Victoria Cundiff . . . had a clear understanding that a walk-away offer was extended") (emphasis added); Ellis Dep. 10–11 (testifying that he and Rountree "had *discussion* of what *Jenna knew about*, information she had about an offer being extended to Zee at some point to resolve that case" and that Rountree told him that Barks "*had indicated* that [Key] *had said* that there had been a walk-away") (emphasis added)).

In sum, the proffered testimony of Barks, Adams, Martin, Rountree, and Ellis regarding out-of-court references to a walk-away offer is exactly the sort of rumor-mill evidence that the hearsay rule is intended to exclude. Even assuming, *arguendo*, that the issue with respect to

---

[18] In this respect, none of the statements made to Barks indicated who had made the purported walk-away offer, and the statements made to Adams indicate that two *different* people made the offer, and that neither person was Cundiff, who Zee now contends made the offer.

[19] Note that Ellis (Zee) is neither related or known to the presiding judge in this matter.

[20] See Zee Summ. J. Opp'n 4, ¶ 4.

trustworthiness were a close one, it would still be appropriate to find the residual exception

inapplicable because this exception "cannot be expanded to swallow the hearsay rule as a

whole." *Treads USA, LLC v. Boyd LP I*, No. 1:08cv27, 2010 WL 3810224, at *1 (W.D. Va.

Sept. 28, 2010) (citing *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998)). *Accord*

*Dunford*, 148 F.3d at 394 (cautioning that the residual exception "is a narrow exception that

should not be construed broadly" and that to "construe it broadly would easily cause the

exception to swallow the rule"). Zee's inability to establish that *anyone* had personal knowledge

of a purported walk-away offer makes the proffered testimony incapable of carrying sufficient

circumstantial guarantees of trustworthiness, a necessary element of the residual exception.

Thus, the testimony is properly excluded as based entirely on inadmissible hearsay and cannot be

considered on summary judgment for that reason. *Maryland Highways Contractors Ass'n v.*

*State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991).

## IV.

Given the exclusion of inadmissible hearsay, Zee's claims of legal malpractice and

constructive fraud against Williams Mullen rise or fall on the Cundiff statement,[21] which

Williams Mullen concedes was not communicated to Zee.[22] In particular, Cundiff (GE) told

Barrett (Zee) that the parties "might be able to wrap things up" in the North Carolina action if

---

[21] Although Zee belatedly argues in its summary-judgment opposition that its legal-malpractice claim is also based on an alleged admission Zee contends Williams Mullen erroneously made in Zee's answer in the North Carolina action, this basis does not appear in Zee's amended complaint in this action and thus cannot be relied upon for the purpose of opposing summary judgment. *See Barclay White Skanska, Inc. v. Battelle Mem. Institute*, 262 F. App'x 556, 563 & n.16 (4th Cir. 2008). Indeed, it is well-settled that "[a] plaintiff may not amend her complaint through amendment in a brief opposing summary judgment." *Id.* (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). To adopt a contrary conclusion would permit Zee's complaint to be "construed so liberally as to deprive [Williams Mullen] of notice" of the basis for Zee's claims. *Barclay White Skanska*, 262 F. App'x at 563.

[22] Indeed, Williams Mullen denies that the Cundiff statement was ever made. *See supra* note 3.

Zee were "prepared" to do the following: (i) "to cease switching of accounts;" (ii) "to withdraw

the DAK proposal;" (iii) "to agree on the customers subject to the agreements;" and (iv) "to

agree to a restart of the time period of the restrictive covenant[.]"   (Doc. 181-1, 2d Cundiff Dep.

16).  To be sure, the Cundiff statement cannot constitute an offer to "walk away" from the North

Carolina action in the literal sense because even though the statement did not appear to

contemplate payment of money by any party, it did contemplate Zee changing its behavior in at

least four respects.  Nonetheless, the analysis turns next to whether that statement, if presented to

a jury, could serve as a basis for either of Zee's claims under North Carolina law.[23]

The parties' dispute on summary judgment focuses sharply on the whether Williams

Mullen's failure to communicate the Cundiff statement injured Zee.  The element of injury—

which consists of the sub-elements of proximate causation and damage—is an essential element

of Zee's claims for legal malpractice and constructive fraud.  *See Self v. Helton*, 201 N.C. App.

653, 659, 688 S.E.2d 34 (2010) (observing that "[a]n essential element of [plaintiffs'

professional-malpractice and constructive-fraud claims] is a showing that defendant proximately

caused their damages"); *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 600–01, 534 S.E.2d

233 (2000) (noting that a legal-malpractice and a constructive-fraud claim each "requires that

plaintiff establish the element of proximate causation").[24]  For purposes of summary judgment, it

is assumed, but not decided, that Williams Mullen's failure to communicate the Cundiff

---

[23] The parties agree that Virginia's choice-of-law rules select North Carolina law as applicable to
these tort claims, as the allegedly tortious conduct occurred there.  *See Klaxon Co. v. Stentor
Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Jones v. R.S. Jones & Assocs.*, 246 Va. 3, 5, 431
S.E.2d 33 (1993).

[24] *See also Haas v. Warren*, 341 N.C. 148, 151, 459 S.E.2d 254 (1995) (noting that a plaintiff
asserting legal malpractice must show that the attorney's "negligence proximately caused
damage to the plaintiff"); *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d
147 (2004) (observing that a plaintiff asserting constructive fraud must show "that plaintiff was,
as a result[ of the alleged fraud], injured").

statement constituted a breach of Williams Mullen's professional duty as counsel to Zee.  It is also assumed, but not decided, that this failure constituted a misrepresentation intended for Williams Mullen's benefit.  Thus, the central question presented is whether there is a triable issue of fact that Williams Mullen's failure to communicate the Cundiff statement to Zee injured Zee.  *See Rubenstein & Rubenstein v. Papadakos*, 295 N.Y.S.2d 876, 877, 31 A.D.2d 615 (App. Div. 1968) (per curiam) (noting that "[w]hile a failure to disclose an offer of settlement and submit to the client's judgment for acceptance or rejection is improper practice . . . it does not in and of itself give a right to affirmative relief" and that "the client must show damage from the omission which would result only in the event that the offer would have been accepted").

Resolution of this question is governed by well-settled principles of North Carolina tort law, as these principles are applicable to claims for legal malpractice and constructive fraud. *See, e.g.*, *Rorrer v. Cooke*, 313 N.C. 338, 360, 329 S.E.2d 355 (1985) ("Generally, the principles and proof of causation in a legal malpractice action do not differ from an ordinary negligence case.").[25]  Under North Carolina law, there must be sufficient evidence of a "causal relation between the alleged negligence and the injury." *Carter v. Carolina Realty Co.*, 223 N.C. 188, 192, 25 S.E.2d 553 (1943).  Put differently, a plaintiff opposing summary judgment must adduce sufficient evidence to allow a reasonable jury to find injury without resort to surmise, speculation, or conjecture. *See Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 68, 414 S.E.2d 339 (1992) (emphasizing that a plaintiff opposing summary judgment must "offer legal evidence

---

[25] *Accord Bauza v. Livingston*, 836 N.Y.S.2d 645, 647, 40 A.D.3d 791 (App. Div. 2007) ("[T]he plaintiff must establish that the attorney's negligence was a proximate cause of the loss sustained, that the plaintiff incurred actual damages as a direct result of the attorney's actions or inaction, and that but for the attorney's negligence, the plaintiff . . . would not have sustained any damages.") (citation omitted);

tending to establish beyond mere speculation or conjecture every essential element of negligence") (citation omitted).[26]

Here, Zee offers two arguments in support of its contention that the record contains sufficient evidence that Williams Mullen's failure to communicate the Cundiff statement injured Zee. First, Zee argues that the Cundiff statement was an offer of settlement that Zee could have, and would have, accepted. Second, Zee argues, alternatively, that the Cundiff statement presented a settlement opportunity that would have ripened into a settlement. In both respects, Zee contends that Williams Mullen's communication of the Cundiff statement to Zee would have resulted in a settlement of the North Carolina action on terms more favorable to Zee than the judgment that ultimately issued against Zee. Williams Mullen responds that the Cundiff statement did not constitute an offer that could have been accepted and therefore enforced as a contract, and that there is insufficient record evidence that would allow a jury to conclude that communication of the Cundiff statement to Zee would have led to settlement of the North Carolina action.

Zee's argument that the Cundiff statement constitutes an enforceable offer clearly fails because no reasonable jury could conclude that Cundiff manifested intent to be bound to her

---

[26] *See also Powell v. Cross*, 263 N.C. 764, 768, 140 S.E.2d 393 (1965) (stressing that an inference with respect to negligence "must be based on some clear and direct evidence" and thus "cannot be based on presumption, some other inference or surmise"); *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750 (2003) (noting with respect to medical evidence that the "evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation") (quoting *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292 (1942)); *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 542, 463 S.E.2d 259 (1995) (observing with respect to medical evidence that "[e]vidence is insufficient on causation if it raises a mere conjecture, surmise, and speculation") (citation and internal quotation marks omitted).

- 17 -

statement as an offer of settlement.[27]   Under North Carolina law, an "offer must be one which is

intended of itself to create legal relations on acceptance" and thus "must not be an offer merely

to open negotiations[.]" *Yeager v. Dobbins*, 252 N.C. 824, 828, 114 S.E.2d 820 (1960) (citation

omitted).[28]   In this sense, "[i]f a proposal is one merely to open negotiations which may or may

not ultimately result in a contract, it is not binding though accepted." *Id.* (citation omitted).[29]

Here, Cundiff's statement cannot be construed as a binding offer of settlement capable of being

accepted.[30]   Cundiff gave no indication that her four "points" as to GE Betz's demands was

---

[27] The Fourth Circuit, applying Maryland law, has on at least one occasion treated a statement's binding force as a matter of law, not fact. *E.g. Hirsch-Chemie Ltd. v. Johns Hopkins Univ.*, 61 F.3d 900, 1995 WL 424929, at *5 (4th Cir. July 20, 1995) (table op.) ("The undisputed circumstances here establish as a matter of law that the parties were merely engaging in preliminary negotiations and meant to form a binding license agreement only with the execution of a written license agreement.") (citing *Restatement (Second) of Contracts* § 27 (1979)); *but see Charbonnages de France v. Smith*, 597 F.3d 406, 415 (4th Cir. 1979) (noting that in contract cases "subjective states and objective manifestations of intention present interpretive issues traditionally understood to be for the trier of fact"). North Carolina courts, by contrast, treat the difference between non-binding statements during preliminary negotiations and a binding contract as an issue of fact. *See Exec. Leasing Assocs., Inc. v. Rowland*, 30 N.C. App. 590, 227 S.E.2d 642 (1976) (reversing grant of summary judgment on the ground that there were genuine factual issues as to whether the offer had been accepted); *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711 (1995) ("Whether mutual assent has been established and whether a contract was intended between the parties are questions for the trier of fact.").

[28] Indeed, the North Carolina Supreme Court has stated that "[c]are should be taken not to construe as offers [communications] which are intended *merely as preliminary negotiations*." *Yeager*, 252 N.C. at 828 (citation omitted).

[29] *See also Young v. Sweet*, 266 N.C. 623, 625, 146 S.E.2d 669 (1966) ("An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations.") (citation omitted).  In this regard, "[i]f any portion of the proposed terms is not settled . . . there is no agreement." *Boyce*, 285 N.C. at 734 (citation omitted).

[30] It is immaterial that Barks—a Zee attorney—believed based on reading Cundiff's deposition transcript that Cundiff manifested intent to be bound. *See Elliott v. Duke Univ., Inc.*, 66 N.C. App. 590, 595, 311 S.E.2d 632, 636 (1984) (noting that a contract does not exist if "one party simply believes that a contract exists, but there is no meeting of the minds").

exhaustive.[31] She did not list the customers that would be the subject of a settlement. She did not specify whether the restart of the restrictive covenants would occur immediately or at some future date. She provided no manner of acceptance. And, most importantly, she in no way manifested intent to be bound to anything in her statement. To the contrary, Cundiff herself described her statement in her deposition testimony as merely "opening the door to discussing a resolution of the dispute" and testified during her deposition that she was simply "reminding Mr. Barrett that . . . we could have further discussions along those lines[.]" (Doc. 181-1, 2d Cundiff Dep. 44, 49). Cundiff also testified that she "was not in any sense making a proposal" on behalf of GE Betz. (Doc. 186-5, 2d Cundiff Dep. 50). Additionally, her statement that GE Betz and Zee "**might** be able to wrap things up" flatly contradicts any contention that Cundiff's statement could reasonably be construed as an offer of settlement capable of binding GE Betz. *Accord Meiners v. Forston & White*, 210 Ga. App. 612, 613, 436 S.E.2d 780 (1993) (concluding in a legal-malpractice action that "plaintiff would have to show that negotiations 'would have' resulted in a settlement; 'might have' or 'could have' is not enough"). Indeed, Zee's standard-of-care expert admits that the Cundiff statement was neither "a formal binding settlement offer" nor "a binding contractual offer." (Doc. 186-6, Burk Dep. 95, 97). Thus, no reasonable jury could conclude that Cundiff's statement was intended as a binding offer of settlement instead of merely a "proposal . . . to open negotiations[.]" *Yeager*, 252 N.C. at 824.

Given that the Cundiff statement does not constitute an offer of settlement, much less a walk-away offer, summary-judgment analysis properly turns to Zee's alternative argument that Williams Mullen's failure to communicate the Cundiff statement injured Zee by depriving it of

---

[31] Instead, Cundiff testified that in her statement she merely "ticked off some points that I understood to be part of those discussions" and that she was not "making an effort to tick off every point that had been involved in the discussions[.]" (Doc. 186-5, 2d Cundiff Dep. 42, 50).

an opportunity to settle the North Carolina action on terms favorable to Zee. Once again, on this issue as on the previous issue, the record is fatally deficient; it is clear that Zee has not adduced sufficient evidence of injury. For the following reasons, there is simply no evidence that the North Carolina action would have been resolved more favorably for Zee had the Cundiff statement been timely communicated to Zee.[32]

First, failure to communicate the Cundiff statement did not deprive Zee of a meaningful settlement opportunity because the statement's communication would merely have given Zee information it already had. The undisputed record evidence establishes that Zee was aware in or before April 2007 that Cundiff's four enumerated demands were, among others, GE Betz's objects of litigation in the North Carolina action. (*See, e.g.*, Docs. 186-11, at 23–24 (GE Betz's *ad damnum* in the North Carolina action); 186-14 (letter from Cundiff to Zee's counsel); 186-17, Bullard Dep. 42–49). The undisputed record evidence also establishes that Zee was aware of GE Betz's willingness to engage in discussions with Zee about GE Betz's concerns so that a lawsuit could be avoided, and that GE Betz actually had these discussions with Zee. (*See* Doc. 181-17, Bullard Dep. 42–57). Indeed, Zee admits in its summary-judgment opposition that "[a]ll of the conditions listed by Ms. Cundiff in her discussion with Mr. Barrett in April 2007 were raised by GE during these conferences." *See* Zee Summ. J. Opp'n 11. The record evidence therefore compels the finding that communication of the Cundiff statement would not have provided Zee with any new information regarding settlement and thus casts substantial doubt on Zee's contention that the Cundiff statement was necessary for Zee to make an informed decision with respect to settlement.

---

[32] Indeed, because a judgment reflecting a sum-certain amount for either punitive damages or attorney's fees in the North Carolina action has not yet entered, the North Carolina action has yet to be resolved in a way that provides a reasonable baseline for calculation of damages based on lost settlement opportunity.

Second, even assuming, *arguendo*, that communication of the Cundiff statement would have informed Zee's judgment on settlement, the record contains insufficient evidence that settlement would have actually resulted. To reach the conclusion that Zee urges, a jury would have to infer that communication of the Cundiff statement to Zee would have induced Zee to convey its own settlement offer to GE Betz, and that GE Betz would have accepted this offer. But these inferences would be speculative, as Zee has adduced insufficient evidence of overlap between the respective settlement amounts that GE Betz and Zee would have been willing to accept independently as of April 2007. Indeed, the record evidence makes clear that GE Betz would have demanded payment of money from Zee,[33] but Zee's evidence with respect to its willingness to settle in April 2007 is based on the assumption—evident from its treatment of the Cundiff statement as a "walk-away" offer—that Zee would not have been required to make payment to settle the North Carolina action at that time.[34] These speculative inferences with

_____

[33] (*See, e.g.*, Doc. 171-14, at 1 (letter from Butler (GE) to Barrett (Zee) that "GE Betz *always has been* and remains serious about collecting its attorneys' fees and damages") (emphasis added)). Cundiff's silence as to payment cannot, as Zee urges, be considered evidence of GE Betz's willingness to settle without payment because, as explained *supra*, Cundiff did not intend her statement to be an exhaustive list of GE Betz's demands.

[34] *See* Zee Summ. J. Opp'n 7, 11 (stating that Zee "would have agreed to settle on the terms proposed by Ms. Cundiff in April 2007" and that "Cundiff did not identify making a monetary payment as one of her terms") (citing, *e.g.*, Doc. 181-17, Bullard Dep. 118, 160).

Williams Mullen made part of the summary-judgment record Bullard's deposition testimony that Zee would have been willing, in April 2007 following the issuance of the temporary restraining order, to give GE Betz *everything* it had asked for in the North Carolina action, including all of GE Betz's reasonable attorney's fees, treble damages, and any other court-ordered relief. (*See* Doc. 171-1, Bullard Dep. 73–87). Although Zee does not rely on this testimony in its summary-judgment opposition, it bears mention that the testimony is unworthy of credence, as it is inconsistent with the lack of *any* offer made by Zee to settle the North Carolina action in 2007. It is also flatly contradicted by Zee's refusal to pay GE Betz $800,000––an amount likely far less than the sum Bullard purportedly would have been willing to pay in April 2007—to settle in February 2008, mere months after April 2007. In any event, this testimony is immaterial on summary judgment because the failure to communicate the Cundiff

respect to settlement would also be contrary to record evidence (i) that Bullard believed that GE Betz was not entitled to the temporary restraining order, (ii) that Zee rejected every settlement offer that GE Betz had made, and (iii) that the most Zee ever offered to settle the North Carolina action was its payment of $170,000 to GE Betz. Given this, the record contains insufficient evidence on which a reasonable jury could, without speculating, conclude that settlement would have been achieved had the Cundiff statement been timely communicated to Zee.

Zee's claims also fail for insufficient evidence of what particular settlement would have been reached had the Cundiff statement had been timely communicated to Zee. Under North Carolina law, "the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olvetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 546–48, 356 S.E.2d 578 (1987).[35] In this case, even assuming, *arguendo*, that communication of the Cundiff statement would have led to settlement of the North Carolina action, Zee has failed to adduce evidence that, as of April 2007, the terms of settlement to which GE Betz and Zee would have independently agreed were substantially the same. *See Rudd v. Electrolux Corp.*, 982 F. Supp. 355, 373 (M.D.N.C. 1997) (concluding that "plaintiff's evidence of lost opportunity is too speculative"). Thus, because a jury would have to resort to speculation to determine what, if any, settlement would have been reached, it is impossible for Zee to establish a reasonable measure of damages that might have been caused by Williams Mullen's failure to communicate

---

statement would not have precluded Zee from approaching GE Betz with Zee's own offer to give GE Betz all the relief requested in GE Betz's complaint.

[35] In other words, "evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Tillis v. Cotton Mills*, 251 N.C. 359, 366, 111 S.E.2d 606 (1959).

the Cundiff statement. *See Olvetti*, 319 N.C. at 547–48 (reversing trial court's conclusion as to lost sales opportunities as "manifestly unsupported and the result of speculation").

In sum, because a jury would be left to speculate whether any settlement, much less a specific settlement, would have resulted from timely communication of the Cundiff statement, Zee's claims fail for want of proof with respect to injury. *See Rorrer*, 313 N.C. at 359–62 (affirming grant of summary judgment for defendant in a legal-malpractice action for lack of evidence supporting causation notwithstanding the defendant's breach of duty); *Self*, 201 N.C. App. at 659–60 (concluding the same in a professional-malpractice action); *Leder v. Spiegel*, 819 N.Y.S.2d 26, 27, 31 A.D.3d 266 (App. Div. 2006) (concluding that "[t]he failure to demonstrate proximate cause mandates the dismissal of a legal malpractice action regardless of whether the attorney was negligent"); *Novich v. Husch & Eppenerer*, 24 S.W.3d 734, 737 (Mo. App. 2000) (affirming grant of summary judgment for defendant in a legal malpractice action where plaintiff's claim that the claimant in the underlying lawsuit "would have settled the claim against him is speculative and inconsistent with [the claimant's] subsequent actions").

## V.

To be sure, it is incumbent on lawyers representing clients in litigation to communicate offers of settlement to clients and to keep clients apprised of the status of settlement negotiations, so that clients have sufficient information to make informed decisions. Nonetheless, a lawyer's failure to communicate adequately with his client regarding settlement is actionable only if the lawyer's failure in that regard violates a duty to the client and injures the client. This is not such a case. This record makes clear that as a matter of settled North Carolina law, the Cundiff statement was neither a walk-away offer nor a binding offer of settlement capable of being accepted. And, a careful review of the record, with all reasonable inferences drawn in Zee's

- 23 -

favor, compels the conclusion that there is no evidence on which a jury could conclude, without conjecture, speculation, or surmise, that Williams Mullen's failure to communicate Cundiff's statement to Zee injured Zee.  Summary judgment must therefore be granted on Zee's legal-malpractice and constructive-fraud claims against Williams Mullen.

An appropriate order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
May 10, 2012

_____/s/_____
T. S. Ellis, III
United States District Judge